IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:13-CR-139-CAP-JFK |
| MAURICIO WARNER | : | |

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO ADMIT POLYGRAPH RESULTS**

Comes now the United States of America, by Sally Quillian Yates, United States Attorney, and Stephen H. McClain and Thomas J. Krepp, Assistant United States Attorneys, and files this Response to the Defendant's Motion to admit the results of a polygraph examination.

**I.   BACKGROUND**

The Indictment alleges that the Defendant engaged in a scheme to file false tax returns using stolen identities from at least as early as January 2011 through at least April 2012. (Doc. 1).  The Defendant led individuals to believe that they could apply for a payment from the government by providing their names and social security numbers.  The Defendant used the personal identifying information from these victims to file over 5,000 fraudulent tax returns with the IRS that claimed millions of dollars in false refunds.  The Grand Jury charged the

Defendant with sixteen counts of wire fraud, in violation of 18 U.S.C. § 1343, sixteen counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A, sixteen counts of submitting false claims to the government, in violation of 18 U.S.C. § 287, and two counts of money laundering, in violation of 18 U.S.C. § 1957.  The Indictment also contains a forfeiture provision.

On July 8, 2013, the Defendant filed a motion to admit the results of a polygraph examination.  (Doc. 15).  According to the motion, the Defendant was polygraphed on May 29, 2013, at the instruction of his counsel.  (Doc. 15, ¶ 2).  The Defendant has supplied the United States with a video recording of this polygraph examination.  The polygraph consists of the following two questions and answers:

```
    Question: Did you ever file a tax return knowing you did
              not have that person's authority to do so?
    Answer:   No.
    Question: Did you ever file a tax return knowing that the
              person was not entitled to the refund you
              requested?
    Answer:   No.
```

((Doc. 15-2-2); ((Gov. Ex. #2) (Videotape #2 (26:00 – 34:00 minutes))).[1]  The Defendant now seeks to admit the results of this examination to rebut the charges in the Indictment.  (Doc. 15).  At the pretrial conference held on July 9, 2013, this

---

[1] The two videotapes supplied by the Defendant have been provided to the Court as Government Exhibits One (Videotape #1) and Two (Videotape #2).

2

Court ordered the government to respond to the Defendant's motion. (Doc. 17).

The United States respectfully requests that this Court deny the Defendant's motion to admit the results of his polygraph examination.  The results are inadmissible (1) under controlling Eleventh Circuit law, which only permits the admission of unstipulated polygraph evidence for impeachment or corroboration; (2) under Fed. R. Evid. 704(b) as inadmissible expert testimony that opines upon the Defendant's mental state when committing the offense; (3) under Fed. R. Evid. 608 as impermissible extrinsic character evidence; and (4) under Fed. R. Evid. 403 as their limited probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

An expensive and time-consuming *Daubert* hearing is unnecessary to resolve this issue as the Defendant is unable to demonstrate the admissibility of this evidence on other evidentiary grounds.

## II.  **ANALYSIS**

Defendant's motion seeks the admission of the polygraph results as expert witness testimony.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).  The

3

Eleventh Circuit addressed the admissibility of polygraphs in *United States v. Piccinonna*, 885 F.2d 1529 (11th Cir. 1989); *see United States v. Henderson*, 409 F.3d 1293, 1304 (11th Cir. 2005) (citing *United States v. Gilliard*, 133 F.3d 809, 814-15 (11th Cir. 1998) ("Because *Piccinonna's* holding concerned only the admissibility of polygraph evidence under the *Frye* 'general acceptance test,' it does not preclude a district court from excluding polygraph evidence for not satisfying the Daubert factors.").  Following *Piccinonna*, a district court can admit polygraph evidence in two very limited circumstances: (1) when the parties stipulate as to the circumstances of the test and as to the scope of its admissibility; and (2) to impeach or corroborate the testimony of a witness at trial.  *Id*. at 1536.  Because the parties have not stipulated to the admissibility of the test, the Defendant can only prevail if he seeks to impeach or corroborate the testimony of a witness at trial.  *See Gilliard*, 133 F.3d at 812 ("As the parties did not stipulate to the circumstances and admissibility of the Honts Polygraph, the issue here is whether the Honts Polygraph evidence should have been admitted to corroborate Gilliard's trial testimony.").

Despite the stringent limitations set forth in *Piccinonna*, the Defendant explicitly asks this Court to "admit into evidence the results of his Forensic Psychophysiological Veracity Assessment." (Doc. 15, ¶ 9).  The Defendant points to no

4

authority that suggests the Eleventh Circuit has permitted the wholesale admission of unstipulated polygraph results as substantive evidence. Nor can he point to any such authority, as *Piccinonna* only permits admission of polygraph evidence by way of stipulation or to impeach or corroborate the testimony of a witness. *Id.* at 1536. Therefore, as to the outright admission of the polygraph evidence, the Defendant's motion is meritless and should be denied.

To the extent that the Defendant seeks the admission of these results for impeachment or corroboration, his motion still fails. Under *Piccinonna*, a party seeking the admission of polygraph test results under the impeachment/corroboration prong must meet three preliminary conditions: (1) the party planning to use the evidence must provide adequate notice to the opposing party that the expert testimony will be offered; (2) the opposing party must be given an opportunity to have his own expert administer a test covering substantially the same questions to the witness; and (3) the Federal Rules of Evidence governing corroboration or impeachment must otherwise be met. *Piccinonna*, 885 F.2d at 1536. The Defendant has met the first two conditions of *Piccinonna*.[2] However, as demonstrated below,

---

[2] Counsel for the Defendant has informed counsel for the United States that the Defendant would agree to submit to a polygraph examination administered by a polygrapher of the government's choosing.

the Defendant is unable to demonstrate that the offered testimony would otherwise satisfy the Federal Rules of Evidence.

## A.  **The polygraph evidence is inadmissible expert testimony under Rule 704(b).**

The Defendant's proffered testimony should be excluded as it runs squarely afoul of Rule 704(b)'s prohibition on an expert speculating as to whether the Defendant acted with the requisite *mens rea*.  Rule 704(b) provides that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008) (citing *United States v. Alvarez*, 837 F.2d 1024, 1031 (11th Cir. 1988)). Despite this ironclad rule in criminal proceedings, the Defendant asks this Court to allow an expert witness testify about a polygraph that inquired as to whether the Defendant *knowingly* filed false tax returns or *knowingly* used the identities of others without their permission.[3]  Each of the

---

[3] The polygraph consists of the following two questions and answers:

        Question:  Did you ever file a tax return knowing you did
                   not have that person's authority to do so?
        Answer:    No.
        Question:  Did you ever file a tax return knowing that the
                   person was not entitled to the refund you
                   requested?
        Answer:    No.

offenses charged in the Indictment requires the government to prove that the Defendant acted *knowingly*.[4]   Testimony from an expert witness about whether the Defendant "knowingly" filed bogus tax returns would therefore run directly counter to Rule 704(b).

The Defendant's proffered evidence is a textbook example of the type of expert testimony that Rule 704(b) explicitly prohibits.  When confronted with similar polygraph evidence, the district court for Southern District of Florida recently held:

> [The polygrapher's] testimony is to the effect that at the time the Defendant engaged in the acts she is charged with, she had no knowledge that it was illegal. Such testimony constitutes testimony with respect to the mental state or condition of a

---

((Doc. 15-2-2); ((Gov. Ex. #2) (Videotape #2 (26:00 - 34:00 minutes))).

[4] See Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Offense Instruction No. 40.3 (2010) (18 U.S.C. §  1343, first element) ("The Defendant *knowingly* devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises"); Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Offense Instruction No. 40.3 (2010) (18 U.S.C. §  1028A, first element) ("The Defendant *knowingly* transferred, possessed, or used another person's means of identification); Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Offense Instruction No. 11.2 (2010) (18 U.S.C. §  287)("It's a Federal crime to *knowingly* make a false claim against any department or agency of the United States."); Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Offense Instruction No. 74.6 (2010) (18 U.S.C. 1957, elements one and two of offense) ("The defendant *knowingly* engaged or attempted to engage in a monetary transaction [and] the Defendant *knew* the transaction involved property or funds that were the proceeds of some criminal activity.") (emphasis added in all).

> defendant in a criminal case. Fed. R. Evid.
> 704(b) not only prohibits such testimony, it
> clearly states the ultimate issue of a
> defendant's mental state is for the 'trier
> of fact alone.'

*United States v. Arthur*, 2011 U.S. Dist. LEXIS 96314 (S.D. Fla. Aug. 29, 2011); *see also United States v. Campos*, 217 F.3d 707, 711 (9th Cir. 2000) ("The polygraph examiner's testimony that [the defendant] was truthful in stating that she did not know that she was transporting marijuana leaves no room for inference, but rather, compels the conclusion that she did not possess the requisite knowledge."). The Defendant is unable to demonstrate how this testimony would be seen by the jury as anything but an expert conclusion that the Defendant did not have the requisite *mens rea* when committing the offenses. *See Campos*, 217 F.3d at 712 ("There is no principled distinction in this case . . . between the testimony of Campos' polygraph expert regarding her physiological responses to the questions posed during the examination and the conclusion from that testimony that she did not 'know' that the van contained a significant amount of marijuana."); *see also Steed*, 548 F.3d at 977 (citing *Alvarez*, 837 F.2d at 1031) (holding that expert testimony may not expressly "state the inference" as to Defendant's *mens rea*, rather the testimony must permit the jury to draw the inference).

The key question at this trial will not be whether a polygrapher believes Defendant told the truth but whether Defendant was acting in good faith when submitting these false tax returns.  To the extent Defendant wishes to offer evidence about his state of mind he can take the stand and tell the jury exactly what he believed while filing thousands of bogus tax returns.[5]  *Cf. United States v. Mann*, 884 F.2d 532, 538 (10th Cir. 1989) ("Because a good-faith defense turns on the defendant's subjective belief, [the defendant's] testimony regarding his views was more probative than [tax protestor] publications representing the source or articulation of those beliefs.").

As held in *Campos*, the expert testimony necessarily draws the inference that Defendant did not act with the requisite *mens rea*.  Such testimony is clearly inadmissible in federal criminal proceedings.  Because the testimony would ask an expert to opine about whether the Defendant had the requisite *mens rea* when committing the offenses, the Court should deny the Defendant's request to admit this evidence.

---

[5] The United States fully recognizes that each defendant has a constitutional right not to testify at this trial and that the government alone has the burden of demonstrating that the defendants did not act in good faith.  *See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Special Instruction No. 9 (2010).  However, the Fifth Amendment protection afforded to Defendant does not permit him to offer evidence that runs afoul of Rules 403, 608, or 704(b).

**B.** **The polygraph evidence is inadmissible extrinsic character evidence, in violation of Rule 608.**

Defendant's motion does not state that this evidence is offered for the purpose of his reputation or character for truthfulness.  However, to the extent his motion could be interpreted as such, the polygraph evidence also constitutes inadmissible extrinsic evidence of character.[6]  *See* FED. R. EVID. 608).  Under Rule 608(a), "a witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."

The testimony of a polygrapher, who appears to have only met the Defendant for purposes of the examination, is completely inappropriate for purposes of Rule 608(a).  Assuming the Defendant's character for truthfulness is attacked on cross-examination, thereby permitting him to offer evidence under Rule 608(a), the polygrapher is not an appropriate witness to

---

[6] As previously stated, unstipulated polygraph testimony may only be offered for impeachment or corroboration.  *See Piccinonna*, 885 F.2d at 1536.  It is inconceivable that the Defendant seeks to offer this testimony for impeachment since the polygraph in question was conducted on himself.  Accordingly, the only relevant inquiry is under Rule 608(a) (as opposed to Rule 608(b)).

demonstrate that the Defendant does in fact have a "reputation for truthfulness." *See United States v. Earley*, 505 F. Supp. 117, 120 (S.D. Iowa 1981) (excluding polygraph evidence on various grounds, including Rule 608, as a "polygraphist expresses his opinion, but he expresses it as to whether the subject of the polygraph examination spoke truthfully or untruthfully on the specific occasion of the polygraph examination. The polygraphist does not express his opinion of the subject's 'character for truthfulness or untruthfulness.'").

In denying the testimony of a polygrapher on Rule 608 grounds, the district court for the Northern District of Alabama has held that, "[the polygrapher] only has knowledge of the polygraph results, not a general character trait of plaintiff. [The polygrapher] has not been shown to be qualified to render an opinion regarding plaintiff's character for truthfulness, and the Court doubts he could be qualified to do so on the basis of reputation." *Maddox v. Cash Loans*, 21 F. Supp. 2d 1336, 1340 (N.D. Ala. 1998).  The Defendant is unable to demonstrate how a polygrapher who asked two questions of the Defendant has any basis to testify about the Defendant's character or reputation for truthfulness. *See Id.* ("The administration of a polygraph examination consisting of three questions is an insufficient basis upon which to form an opinion as to a person's character for truthfulness."); *see generally United States v. Duque*, 176

F.R.D. 691, 695 (N.D. Ga. 1998) ("The polygraph examiner can testify to only one matter - that, in his or her opinion, the defendant's physiological responses indicated a lack of deception when, on another occasion outside of court, the defendant was asked certain questions. This opinion is a secondary and indirect indicia of truthfulness.").

Because a polygrapher who presumably met the Defendant on only one occasion has no basis to testify about the Defendant's character or reputation for truthfulness, testimony regarding the polygraph results should be excluded under Rule 608(a).

**C.    The polygraph tests are inadmissible under Rule 403.**

The Defendant's offered polygraph testimony should also be excluded pursuant to Rule 403 because its limited probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Eleventh Circuit and its district courts - to include this Court - have frequently excluded the admission of polygraph results on Rule 403 grounds.  *See Gilliard*, 133 F.3d at 815-16; *United States v. Loaiza-Clavijo*, 2012 U.S. Dist. LEXIS 20685 (N.D. Ga. Feb. 17, 2012) ("To the extent Defendant desires to admit the evidence to explain how it relates to her credibility or corroborates her testimony, the Court concludes the

12

prejudicial effect of the evidence substantially outweighs its probative value."); *United States v. Botes*, 1:04-CR-568-CC-GGB (N.D. Ga. 2006) (Doc. 185, pp. 16-19); *Duque*, 176 F.R.D. at 695 ("[E]ven had Defendant established reliability and relevance, the proffered evidence would likely be inadmissible under Rule 403 of the Federal Rules of Evidence."); *see also United States v. Pavlenko*, 845 F. Supp. 2d 1321, 1325 (S.D. Fla. 2012); *Maddox,* 21 F. Supp. 2d at 1340.  Other circuits and district courts have followed suit and have refused the admission of polygraph evidence on Rule 403 grounds.  *See, e.g.*, *United States v. Ramirez-Robles*, 386 F.3d 1234, 1246-48 (9th Cir. 2004) (excluding evidence on Rule 403 grounds with no *Daubert* hearing); *United States v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995) (noting a "substantial possibility" that the polygraph results would mislead and confuse the jury); *United States v. Pitner*, 969 F. Supp. 1246, 1252 (W.D. Wash. 1997) ("When scientific evidence is presented to jurors with representations that the results are, for example, 98% accurate, there is a substantial risk that the jurors will substitute the examination results for their own judgment."); *United States v. Lech*, 895 F. Supp. 582, 585-86 (S.D.N.Y. 1995) (Sotomayor, J.).

The private polygraph offered by defendant is precisely the type of evidence Rule 403 is designed to exclude because "the potential for prejudice is extremely high, and . . . the

probative value of the examination results is unproven." *United
States v. Orians*, 9 F. Supp. 2d 1168, 1174 (D. Ariz. 1998).  The
validity and reliability of a polygraph test is highly dependent
on how the polygraph examiner conducts the pre-test interview,
poses the questions, and administers and scores the test.  *See
United States v. Cordoba*, 991 F. Supp. 1199, 1205-08 (C.D. Cal.
1998).  The questionable reliability of the polygraph, as noted
by the plurality opinion in *Sheffer*, renders its probative value
negligible at best.[7]  *Maddox*, 21 F. Supp. 2d at 1340.

The probative value of this particular examination is
particularly limited.  As the videotapes confirm, (*see* Gov. Exs.
1 and 2), Defendant's offered evidence consists of two questions
regarding tax returns.  A polygrapher's opinion as to the

---

[7] The Supreme Court addressed the admissibility of polygraph
evidence in *United States v. Scheffer*, 523 U.S. 303 (1998), and
held that a *per se* rule excluding polygraph evidence in court
martial proceedings did not violate the Fifth or Sixth Amendment
rights of the accused to present a defense.  However, in the
same opinion, the Court noted that the polygraph has limited
probative value as even the best polygraph test is fraught with
doubts and uncertainties.  *See Scheffer*, 523 U.S. at 309-10.
Defendant repeatedly cites Justice Stevens' dissent in *Scheffer*,
but the plurality opinion recognized that, "[t]he contentions of
respondent and the dissent notwithstanding, there is simply no
consensus that polygraph evidence is reliable. To this day, the
scientific community remains extremely polarized about the
reliability of polygraph techniques." 523 U.S. at 309.  In
commenting on the reliability of the polygraph, the plurality
opinion noted that, "scientific field studies suggest the
accuracy rate of the 'control question technique' polygraph is
'little better than could be obtained by a toss of a coin', that
is, 50 percent." *Id*. at 310 (citations omitted).

Defendant's truthfulness in responding to two limited questions has little to no probative value in this case.  As previously stated, the key question is what the Defendant – not a third party polygrapher - believed when filing thousands of false tax returns.  *See supra* at 6-12.  The Defendant points to nothing in his brief that suggests the polygrapher's opinion as to the Defendant's truthfulness in responding to these questions has anything more than slight probative value.

This limited probative value is far outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, and waste of time.  *See United States v. Alexander*, 526 F.2d 161, 168 (8th Cir. 1975) ("When polygraph evidence is offered in evidence at trial, it is likely to be shrouded with an aura of near infallibility, akin to the ancient oracle of Delphi.").  The unfair prejudice to the United States is exacerbated by the fact that the government was not afforded the opportunity to be present at this polygraph.  *See United States v. Canter*, 338 F. Supp. 2d 460, 464 (S.D.N.Y. 2004) ("[W]ith the Government unaware of the examination at the time that it was performed, Zambouros essentially had nothing to lose -- had he failed the examination, it is highly improbable that he would have revealed that result to the Government.")  The absence of notice and an opportunity to be present at the examination "may be a factor in determining whether admission of the polygraph

evidence would unduly prejudice the adverse party." *Id*.  The
fact that the polygraph was videotaped is immaterial.  *See
Gilliard*, 133 F.3d at 816 ("In this case, even though the
Government had the opportunity to view a videotape of the Honts
Polygraph examination, viewing a videotape is not the same as
being present at the examination.").  Moreover, "because the
polygraph is imbued in the popular imagination with the aura of a
'lie detector,'" the potential for unfair prejudice from its
admission is great. *United States v. Varoudakis*, 1998 U.S. Dist.
LEXIS 13728 at *19 (D. Mass. Mar. 27, 1998) ("The jury may easily
put far too great of weight on the polygraph.")  "[T]he aura of
infallibility attending polygraph evidence [could] lead jurors to
abandon their duty to assess credibility and guilt." *United
States v. Lea*, 249 F.3d 632, 639 (7th Cir. 2001) (citing *Sheffer*,
523 U.S. at 313-14).

Additionally, the admission of this polygraph evidence will
confuse the issues, mislead the jury, needlessly delay these
proceedings, and result in the proverbial "battle of the
experts."  As the Eleventh Circuit has held, polygraph evidence
threatens to shift the focus of a criminal trial from determining
guilt or innocence to determining the validity of the scientific
method at issue.  *See Gilliard*, 133 F.3d at 815.  Similarly, this
Court recognized in *Duque* that the admission of polygraph
evidence "unduly invades the province of the [fact finder] to

16

determine the credibility of all witnesses" and "would make time-consuming 'battles of experts' a standard feature of criminal trials." 176 F.R.D. at 695. As this Court succinctly noted in *Botes*, the presentation of polygraph evidence from both parties could take over two days and needlessly delay the proceedings. (1:04-CR-568-CC-GGB at Doc. 185, p. 17); *see also Duque*, 176 F.R.D. at 695 ("Undue focus on the one opinion of the examiner, its scientific basis, and the examiner's qualifications and methodology will necessarily distract the jury from its duty to evaluate all of the evidence."). The admission of polygraph evidence will inevitably cause both parties to call various expert witnesses which will turn the focus of the trial from the Defendant's mental state when filing these tax returns to the question of the *polygraphers'* belief about the Defendant's mental state.

In sum, the polygraph evidence is of dubious probative value yet it would be unfairly prejudicial to the government and will almost certainly confuse the issues, mislead the jury, and lead to a waste of time. This Court should therefore exclude the admission of the Defendant's polygraph results under Rule 403.

**D.     A _Daubert_ hearing is unnecessary to resolve the Defendant's motion.**

There is no need for a _Daubert_ hearing in the instant case as this Court can deny the admission of the polygraph evidence under _Piccinonna_ (as to substantive admission), Rule 704(b), Rule 608 and Rule 403.[8]   Here, the parties' submissions as well as the videotapes of the actual polygraph, (_see_ Gov. Exs. 1, 2),

---

[8] Federal Rule of Evidence 702, as amended, provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert y knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court addressed the requirements of Rule 702 in _Daubert v. Merrell Dow Pharm._, 509 U.S. 579 (1993).  The district judge is to perform a gatekeeping function to ensure that expert evidence is "not only relevant, but reliable." _Daubert_, 509 U.S. at 589.  The Court provided a list of factors that trial courts may consider when determining the admissibility of expert testimony:  (1) whether the method consists of a testable hypothesis; (2) whether the method has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the method is generally acceptable within the relevant scientific community.  _Id._ at 593-95.  The Rule 702 inquiry leaves a trial judge "considerable leeway in deciding . . . how to go about determining whether particular expert testimony is reliable." _Kumho Tire Co. v. Carmichael_, 526 U.S. 137, 152 (1999); _United States v. Majors_, 196 F.3d 1206, 1215 (11th Cir. 1999).

provide ample basis for this Court to make a ruling on admissibility under these other rules of evidence.  The Eleventh Circuit has repeatedly held that time-consuming *Daubert* hearings are not necessary each time a party wishes to offer expert testimony.  *See Cook v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005) (citing *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001)). ("[T]he trial court was under no obligation to hold [a *Daubert* hearing]. As we have explained previously, "*Daubert* hearings are not required, but may be helpful in 'complicated cases involving multiple expert witnesses.'").  "[T]he procedural handling of an objection to proposed expert testimony is a matter committed to the trial court's discretion, and a formal *Daubert* hearing will not in all cases be necessary. In some cases, an evidentiary hearing is unnecessary because the parties' reciprocal submissions are sufficient to enable the court to resolve the reliability issue without taking live testimony."  *United States v. Frazier*, 387 F.3d 1244, 1274 n.4 (11th Cir. 2004).

Courts have repeatedly held that *Daubert* hearings are not necessary every time a defendant seeks to offer polygraph evidence.  *See Campos*, 217 F.3d at 712 ("If evidence is inadmissible by application of one evidentiary rule, there is no need for a court to determine whether it satisfies predicate evidentiary standards pertaining to another rule."); *United*

*States v. Benavidez-Benavidez*, 217 F.3d 720, 724 (9th Cir. 2000)
("[D]istrict courts are free to reject the admission of
polygraph evidence on the basis of any applicable rule of
evidence without analyzing all other potential bases of
exclusion."); *Ramirez-Robles*, 386 F.3d at 1246 ("[The defendant]
contends that the district court erred when it chose not to
perform a *Daubert* hearing on the polygraph evidence. The *Daubert*
hearing [the defendant] seeks, however, is not necessary if the
proffered evidence can be excluded by Rule 403."); *Booth*, 309
F.3d at 573 (holding that a *Daubert* hearing was unnecessary
because the polygraph results violated Rule 704(b)); *United
States v. Lea*, 249 F.3d 632, 640 (7th Cir. 2001) (hearing
unnecessary because the polygraph evidence was otherwise
inadmissible under Rule 403). Because this polygraph evidence is
otherwise inadmissible, there is "little reason to force a
district court to expend precious judicial resources in
painstakingly evaluating the scientific validity of the evidence
under *Daubert*." *United States v. Pettigrew*, 77 F.3d 1500, 1515
(5th Cir. 1996) (affirming the district court's decision not to
hold a *Daubert* hearing to determine the admissibilty of
polygraph evidence because the evidence failed the second prong
of the Rule 702 inquiry); *see also United States v. Prince-
Oyibo*, 320 F.3d 494, 501, (4th Cir. 2003) (upholding exclusion
of polygraph evidence with no hearing because of that circuit's

prior cases stating that polygraph evidence is *per se*
inadmissible); *United States v. Waters*, 194 F.3d 926, 930 (8th
Cir. 1999) (holding that no need to evaluate *Daubert* factors or
hold a *Daubert* hearing when the polygraph results are otherwise
inadmissible under Rule 403); *United States v. Canter*, 338 F.
Supp. 2d 460, 463-65 (S.D.N.Y. 2004) (denying admission of
polygraph evidence without holding a *Daubert* hearing); *United
States v. Lech*, 895 F. Supp. 582, 586 (S.D.N.Y. 1995)
(Sotomayor, J.) (denying defendant's motion for a hearing on the
admissibility of polygraph evidence).

Accordingly, the government respectfully requests that the
Court rule on the admissibility of the proffered polygraph
evidence under *Piccinonna* (as to substantive admission), Rules
704(b), 608, and 403, prior to reaching the issue of
admissibility under Rule 702 and *Daubert*.  To the extent the
Court believes it necessary to hold a *Daubert* hearing, the
United States seeks leave to obtain the assistance of an expert
polygrapher and examine the Defendant prior to the hearing.  The
United States believes it would be appropriate at that point to
fully brief the *Daubert* factors to this Court.[9]

---

[9] While the Court has not yet heard evidence on the Defendant's
motion, this Court has on at least three separate occasions
refused to permit the admission of polygraph evidence.  *See
Loaiza-Clavijo*, 2012 U.S. Dist. LEXIS 20685; *United States v.
Botes*, 1:04-CR-568-CC-GGB; *United States v. Duque*, 176 F.R.D.
691, 694-95 (N.D. Ga. 1998).  In *Duque*, this Court concluded

## III. **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court deny the admission of Defendant's motion to admit polygraph evidence.

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

/S/STEPHEN H. McCLAIN
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 143186

/S/THOMAS J. KREPP
ASSISTANT U.S. ATTORNEY
Georgia Bar No. 346781

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6000
404/581-6181

---

that the "the 'control-question method of polygraph examination has not been subjected to adequate peer review and has not gained general acceptance in the relevant scientific community." *Id.* at 694. Indeed, the relevant scientific community agrees that here is no unique physiological response to deception." 176 F.R.D. at 694-95. While not dispositive on the issue of admissibility, the Defendant points to nothing in his motion that distinguishes the examination conducted in this case from the types of examinations that this Court ruled inadmissible in *Loaiza-Clavijo*, *Botes,* and *Duque*.

<u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has this date electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

- HOWARD J. WEINTRAUB
- BENJAMIN B. ALPER

This 13th day of August, 2013.

/s/ THOMAS J. KREPP
ASSISTANT U.S. ATTORNEY
Thomas.Krepp@usdoj.gov