## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

CRIMINAL CASE NO.

v.

1:13-CR-00139-CAP-JFK-1

MAURICIO WARNER,

        Defendant.

## <u>REPORT AND RECOMMENDATION</u>

Pending before the court is Defendant Mauricio Warner's motion [Doc. 15] and supplemental motion [Doc. 23] to admit the results of a polygraph examination taken by Defendant on May 29, 2013.  The Government opposes admission of the results of the polygraph examination.  [Doc. 24].  And Defendant filed a reply in support of his motion.  [Doc. 35].  Also pending before the court is Defendant's motion [Doc. 22] to compel disclosure of exculpatory material, the government's response [Doc. 30] in opposition, and Defendant's reply [Doc. 36].

## POLYGRAPH EXAMINATION

Defendant seeks to admit at trial pursuant to the Eleventh Circuit Court of Appeals' test set forth in <u>United States v. Piccinonna</u>, 885 F.2d 1529 (11th Cir. 1989),

AO 72A
(Rev.8/82)

the results of a polygraph examination taken by him on May 29, 2013.  [Docs. 15, 23 and 35 at 3].  The Government opposes the admissibility of the test results, arguing that an evidentiary hearing is not necessary, because Defendant cannot satisfy the third prong of the Piccinonna test, that is, that the polygraph test results otherwise satisfy the Federal Rules of Evidence, specifically Rules 704(b), 608 and 403.  [Doc. 24].  For these reasons, the Government contends that a Daubert[1] hearing is not necessary.  [Id. at 18-22].  Defendant counters that a hearing is required and asks that the court hold such a hearing before ruling on his motions.  [Doc. 35].

## I.     Background Facts

On April 16, 2013, a federal grand jury seated in this District returned an indictment [Doc. 1] against Defendant charging him with fifty counts involving violations of 18 U.S.C. § 1343 (Counts 1-16, wire fraud), § 1028A (Counts 17-32, aggravated identity theft), § 287 (Counts 33-48, false claims), and § 1957 (Counts 49-50, money laundering).  The indictment also contains a forfeiture provision.  All of the charges in the indictment arise out of Defendant's allegedly fraudulent scheme to obtain personal identifying information from unsuspecting third parties, who were told by Defendant that they would receive a "stimulus payment" or "Free Government Money"

---

[1]Daubert v. Merrell Dow Pharmaceuticals, Inc., 113 S. Ct. 2786 (1993).

funds from the government, and then to use that information to file allegedly false and fraudulent income tax returns. [Doc. 1]. As a result of this alleged conduct, Defendant filed over 5,000 tax returns and caused to be deposited millions of dollars into bank accounts under his control. [Id.].

Accordingly, Defendant is charged with knowingly and intentionally devising a scheme and artifice to defraud the Internal Revenue Service ("IRS"), that is, filing the fraudulent tax returns, while knowing said tax returns were false and fraudulent, and with knowingly filing false claims with the IRS. [Doc. 1, Counts 1-16, 33-48]. And he is charged with knowingly possessing and using the identification information of third parties without lawful authority by the filing of the unauthorized tax returns. [Id., Counts 17-32]. The money laundering counts arise out of the depositing of the allegedly ill-gotten tax refunds. [Id., Counts 49-50].

On May 29, 2013, without prior notice to the Government, Defendant attended a polygraph examination given by Donald J. Imbordino. [Docs. 15, 15-1 (Imbordino Curriculum Vitae), 15-2 (Polygraph Report)]. Defendant met Mr. Imbordino, apparently for the first and only time, in order for the examination to be conducted. During the polygraph pre-test, Defendant explained his tax services and, according to the report, "categorically denied ever knowingly preparing a tax return that was not

3

legitimate." [Doc. 15-2 Polygraph Report].[2]   The report states that two relevant

questions were asked and provides Mr. Imbordino's "opinion concerning [Defendant's]

veracity relative to these" questions:

> 1.   Did you ever file a tax return knowing you did not have that person's authority to do so?
>
>    Answer:    No.
>
> 2.   Did you ever file a tax return knowing that the person was not entitled to the refund you requested?
>
>    Answer:    No.
>
> OPINION:  No Deception Indicated.  Based on Mr. Imbordino's analysis of the three charts collected[, Defendant's] responses did not indicate deception when answering the above relevant questions.

[Id.].  Although not stated when the meeting with Defendant began, the examination

was concluded at 12:20 p.m.  [Id.].

Defendant also provided, in support of his motion, a quality control review of the

polygraph examination conducted by Elmer Criswell, whose curriculum vitae is

provided. [Docs. 23, 23-1 (Criswell Curriculum Vitae), 23-2 (Quality Control Report)].

Mr. Criswell concluded that the polygraph examination was properly conducted and

---

[2]Along with the Government's response in opposition to Defendant's motion, the Government provided two discs bearing the video recording of the polygraph examination, which are identified as Government's Exhibits 1 and 2.

4

that he agreed with Mr. Imbordino's "determination of truthfulness on the polygraph examination" by Defendant.  [Doc. 23-2 Quality Control Report, page 4].

Defendant, in addition to giving the Government notice of the intent to use the polygraph examination results at trial, advised the Government that he will submit to a polygraph examination, if requested, to be administered by an expert of the Government's choosing.  [Doc. 24 at 5; Doc. 35 at 4].

**II.    Discussion**

Federal Rule of Evidence 702 (as amended 2011)[3] provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data:
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to Rule 702, as well as <u>Daubert</u> and its progeny, "district courts must act as 'gatekeepers'[, admitting] expert testimony only if it is both reliable and relevant."

---

[3]The 2011 amendments were not substantive but intended to be stylistic only. Fed. R. Evid. 702, advisory committee notes 2011 Amendments.

5

Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005).  The Court in Rink

stated:

> To fulfil their obligation under Daubert, district courts must engage in a
> rigorous inquiry to determine whether:  (1) the expert is qualified to testify
> competently regarding the matters he intends to address; (2) the
> methodology by which the expert reaches his conclusions is sufficiently
> reliable as determined by the sort of inquiry mandated in Daubert; and (3)
> the testimony assists the trier of fact, through the application of scientific,
> technical, or specialized expertise, to understand the evidence or to
> determine a fact in issue.

Id. at 1291-92 (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562

(11th Cir. 1998)) (internal quotation marks omitted); see also United States v. Frazier,

387 F.3d 1244, 1260 (11th Cir. 2004) (same).  "The party offering the expert has the

burden of satisfying each of these three elements by a preponderance of the evidence."

Rink, 400 F.3d at 1292 (citing Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306

(11th Cir. 1999)).  This burden remains the same "whether the proponent is the plaintiff

or the defendant in a civil suit, or the government or the accused in a criminal case."

Frazier, 387 F.3d at 1260.  As will be discussed infra, assuming arguendo that

Defendant can establish that Mr. Imbordino is qualified and that the polygraph

procedure employed is sufficiently reliable after application of the Daubert factors, the

court finds that Mr. Imbordino's opinion as to the veracity of Defendant's answers to

6

the two relevant questions posed during the examination simply is not the type of evidence that will assist the trier of fact but is, in fact, the type of credibility determination that jurors are tasked with making in resolving the facts in each and every case - the opinion will not assist the trier of fact.  See Frazier, 387 F.3d at 1260 ("While there is inevitably some overlap among the basic requirements-qualification, reliability, and helpfulness-they remain distinct concepts and the courts must take care not to conflate them.").

The admissibility of polygraph evidence also faces additional hurtles. "Opinions based on polygraph examinations are seldom, if ever, admissible into evidence." Norelus v. Denny's, Inc., 628 F.3d 1270, 1284 (11th Cir. 2010) ("the only thing the polygraph examination *proves* is that the examinee believes [his] own story") (citation and internal quotation marks omitted; emphasis added).  And although such evidence is no longer *per se* inadmissible, the Eleventh Circuit Court of Appeals allows such evidence in only two situations: 1) upon the stipulation of the parties or 2) to impeach or corroborate the testimony of a witness at trial.  Piccinonna, 885 F.2d at 1536. Because the parties have not stipulated to the admission of the polygraph examination, Defendant seeks to introduce the results to corroborate his testimony at trial.  [Doc. 35 at 4].  As such, Defendant must satisfy three prerequisites for the results to be

admissible under <u>Piccinonna</u>:  1) "the party planning to use the evidence at trial must provide adequate notice to the opposing party that the expert testimony will be offered[;]" (2) "the opposing party [must be] given reasonable opportunity to have its own polygraph expert administer a test covering substantially the same questions[;]" and (3) "the admissibility of the polygraph administrator's testimony will be governed by the Federal Rules of Evidence for the admissibility of corroboration or impeachment testimony." <u>Id.</u>  While the Government concedes that Defendant has satisfied the first two prerequisites, the Government argues that Rules 403, 608 and 704 of the Federal Rules of Evidence require that the evidence be excluded from trial.  [Doc. 24].  The court agrees.  <u>United States v. Pavlenko</u>, 845 F. Supp. 2d 1321, 1324 (S.D. Fla. 2012) ("While <u>Piccinonna</u> did away with the *per se* ban on admissibility, it did not in any way limit the trial court's discretion to exclude polygraph evidence 'on other grounds under the Federal Rules of Evidence.'") (citation omitted).

### A.    Rule 702

To be admissible under Rule 702, the evidence or testimony must "'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  <u>Daubert</u>, 113 S. Ct. at 2795 (quoting former Fed. R. Evid. 702); <u>see also</u> <u>Frazier</u>, 387 F.3d at 1262-63 ("Proffered expert testimony generally will not help the trier of fact when it offers

nothing more than what lawyers for the parties can argue in closing arguments."); United States v. Thanh Quoc Hoang, 891 F. Supp. 2d 1355, 1359 (M.D. Ga. 2012) ("To assist a jury, the expert's opinions must cover matters beyond the ken of jurors-something beyond the average citizen's experience.").  In this case, Defendant seeks to introduce Mr. Imbordino's opinion that no deception was indicated, that is, that Defendant was being truthful, when Defendant answered, "No," to the questions, "Did you ever file a tax return knowing you did not have that person's authority to do so?" and "Did you ever file a tax return knowing that the person was not entitled to the refund you requested?"  [Doc. 15, Polygraph Report].[4]  Making such a credibility determination falls within the exclusive province of the jury, and that determination is not aided by the expert testimony offered in this case.

In United States v. Scheffer, 118 S. Ct. 1261 (1998), the Supreme Court concluded that the military rule of evidence making polygraph evidence inadmissible in court-martial proceedings did not unconstitutionally abridge the right to present a

---

[4]Defendant's attempt to couch Mr. Imbordino's finding as something other than an opinion on his veracity or truthfulness is undermined by the evidence he offers in support of admissibility.  [Doc. 35 at 10-11].  Mr. Criswell's quality control report concluded that the polygraph examination was properly conducted and that he agreed with Mr. Imbordino's "determination of *truthfulness* on the polygraph examination" by Defendant.  [Doc. 23-2 Quality Control Report, page 4 (emphasis added)].

AO 72A
(Rev.8/82)

defense. Id. at 1269. In reaching this conclusion, the Court spoke to the role of the jury and the impact of polygraph evidence on that role. The Court stated, "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.'" Id. at 1266 (citation omitted; emphasis in original). "Determining the weight and credibility of witness testimony . . . has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'" Id. at 1266-67 (citation omitted). In other words, another person's opinion as to credibility, based on a brief encounter at another time and place - outside the presence of the jury and without full knowledge of the underlying facts and circumstances presented to the jury - "suppl[ies] the jury only with another opinion, in addition to its own, about whether the witness was telling the truth." Id. at 1267; and see Pavlenko, 845 F. Supp. 2d at 1328 ("'Unlike other types of experts who assist the jury in understanding factual matters outside the juror's knowledge, a polygraph expert merely supplies the jury with another opinion, in addition to their own, as to whether the witness is telling the truth.'") (citation omitted); Humbert v. City of College Park, 2008 WL 5586504, at *4 (N.D. Ga. August 18, 2008) (Rejecting the opinion of an expert, who concluded that a defendant had lied about the circumstances in the present case and about past incidents, the court stated, "The

10

determination of a witness' credibility is within the exclusive province of the jury[;] . . . this testimony is unhelpful to the jury because the determination of whether defendant . . . lied . . . is not beyond the understanding of an average lay person.").[5]

Because the expert opinion in this case, as to the credibility of Defendant, is a matter within the exclusive province of the jury and because that opinion will not assist the trier of fact by addressing matters beyond the understanding of the jurors, Defendant cannot satisfy this requirement of Rule 702.  And, even if Defendant could satisfy his burden under Rule 702 and Daubert, the expert opinion offered in this case is not otherwise admissible pursuant to Rules 403, 608 and 704.

### B.    Rule 704

Federal Rule of Evidence 704 (as amended in 2011) provides as follows:

(a) In General-Not Automatically Objectionable.  An opinion is not objectionable just because it embraces an ultimate issue.

_____

[5]And found in the discussion of whether such evidence aids the jury under Rule 403, as will be addressed *infra*, other courts have reached the same conclusion about "usefulness" of the results of a polygraph examination.  See United States v. Arthur, 2011 WL 3844090, at *4 (S.D. Fla. August 29, 2011) (finding that polygraph examiner had "merely assessed credibility which is what juries do every day[,]" the court found that the expert evidence would not be helpful to the jury "because the issue of a witness's credibility is one that lay persons are more than competent to handle without the need of expert testimony"); Maddox v. Cash Loans of Huntsville II, 21 F. Supp. 2d 1336, 1340 (N.D. Ala. 1998) (finding that expert testimony about the credibility of a witness offers the jury little, if any, assistance).

11

(b) Exception.  In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Accordingly, "'[e]xpert testimony expressly stating an opinion as to the defendant's state of mind at the time of the offense is barred by rule 704(b).'" United States v. Augustin, 661 F.3d 1105, 1123 (11th Cir. 2011) (citation omitted). "Thus, with respect to a criminal defendant's mental state, Congress confirmed that 'the *jury* is the lie detector.'"  United States v. Campos, 217 F.3d 707, 711 (9th Cir. 2000) (citation omitted).

In this case, Defendant seeks to introduce Mr. Imbordino's opinion that no deception was indicated, meaning that Defendant was truthful, when he answered, "No," to the following questions:

1.   Did you ever file a tax return *knowing* you did not have that person's authority to do so?

2.   Did you ever file a tax return *knowing* that the person was not entitled to the refund you requested?

[Doc. 15-2 Polygraph Report (emphasis added)].  This evidence is not admissible under Rule 704(b) because Mr. Imbordino would be stating his opinion that, because Defendant was truthful in denying knowingly engaging the conduct identified,

12

Defendant did not possess the mental state necessary to commit the charged criminal conduct.

As the Government points out, and Defendant does not dispute, in order to establish Defendant's guilt at trial, the Government must prove that Defendant acted *knowingly*. [Doc. 24 at 6-7 & n.4]. In <u>Campos</u>, the Ninth Circuit Court of Appeals addressed facts markedly similar to those before this court and found that the polygraph examiner's opinion ran afoul of Rule 704(b). 217 F.3d at 710-12. In <u>Campos</u>, the defendant was charged with importation and possession of marijuana with the intent to distribute requiring the Government to prove the defendant acted knowingly and intentionally. <u>Id.</u> at 709-11. The defendant took a polygraph test, answering, "No," to the following questions:

> Q. 33:    When you were driving the van on the twenty-fifth of January, did you *know* there were drugs in the van?
>
> Q. 35:    Before crossing the border on the twenty-fifth of January, did you *know* that there were drugs in the van?

<u>Id.</u> at 710 (emphasis added). The polygraph examiner's trial testimony would be that in his opinion these responses were truthful. <u>Id.</u> at 711. The court noted, under Rule 704(b), that a prohibited opinion "'is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*.'"

13

Id. (citation omitted).   Accordingly, the court held, "The polygraph examiner's testimony that Campos was truthful in stating that she did not know that she was transporting marijuana leaves no room for inference, but rather, compels the conclusion that she did not possess the requisite knowledge." Id.

The same conclusion applies in this case.  Defendant denied knowingly filing tax returns without authority or seeking refunds not owed.  Mr. Imbordino's opinion that no deception was indicated - or as Mr. Criswell stated, Mr. Imbordino's "determination of truthfulness on the polygraph examination" [Doc. 23-2 Quality Control Report, page 4] - if credited by the jury, "leaves no room for inference, but rather, compels the conclusion that [Defendant] did not possess the requisite knowledge" to commit the charged offenses. Campos, 217 F.3d at 711.  And this court is no more persuaded than the Ninth Circuit Court of Appeals was in Campos with the argument that Mr. Imbordino "would testify only to [Defendant's] physiological responses to the polygraph examination and not reach the ultimate issue . . . ." 217 F.3d at 712. [See Doc. 35 at 10].  Information limited solely to Defendant's physiological responses would be meaningless to the jury absent the opinion of no deception based on Mr. Imbordino's analysis of those responses.  "Polygraph tests require the examiner to measure and interpret a set of 'physiological correlates of anxiety' and . . . to 'offer[ ]

14

an opinion to the jury about whether the witness-often, as in this case, the accused-was deceptive in answering questions about the very matters at issue in the trial.'" Id. (quoting Scheffer, 118 S. Ct. at 1267). This court agrees with that conclusion.

The district court in Arthur, 2011 WL 3844090, reached the same conclusion. The defendant was charged with wire and mail fraud in connection with a mortgage fraud scheme in which she was alleged to have been a "straw buyer." Id., at *1. Without notice to the Government, Defendant took a polygraph examination which asked about her knowledge, that is, did she have any idea, that something might be illegal with the mortgage paperwork and was she telling the truth in denying such knowledge. Id., at *3. Based on his analysis of the tests administered and his observation of the defendant, the examiner concluded that "it is my opinion that there were no significant and consistent physiological reactions consistent with deception" and that "it is my professional opinion that [the Defendant] WAS TRUTHFUL . . . ." Id., at *2. The court held that this testimony, "to the effect that at the time the Defendant engaged in the acts she is charged with, she had no knowledge that it was illegal[,]" constitutes testimony prohibited by Rule 704(b). Id., at *3 ("even though [the questions] wear the thin veil of opinion as to Defendant's truthfulness when answering these questions about her knowledge, rather than [the expert's] blunt

15

statement as a psychologist that in his opinion she did not have the knowledge, it is too close to the type of testimony Rule 704(b) prohibits"). The reasoning of the courts in Campos and Arthur is persuasive.

The proffered evidence is not admissible under Rule 704(b).

## C.      Rule 608

"'[W]hether used to corroborate or impeach, the admissibility of the polygraph [evidence] will be governed by the Federal Rules of Evidence for the admissibility of corroboration or impeachment testimony,' such as Rule 608." United States v. Souffrant, 517 Fed. Appx. 803, 815 (11th Cir. 2013) (citation omitted); see also United States v. Thomas, 768 F.2d 611, 618 (5th Cir. 1985) (because the defendant sought to offer the testimony of the polygraph examiner "to bolster his credibility as a witness . . . Federal Rule of Evidence 608 governs"). Rule 608 of the Federal Rules of Evidence (as amended 2011) provides in pertinent part:

> (a)   Reputation or Opinion Evidence.  A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character.  But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.
> (b) Specific Instances of Conduct.  Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances

of a witness's conduct in order to attack or support the witness's character for truthfulness. . . .

Defendant seeks admission of the polygraph evidence only if he testifies and his credibility is attacked by the Government.  [Doc. 35 at 3].

Although Defendant is not specific as to what type of "attack" by the Government he believes triggers his ability to offer this evidence, Rule 608 only comes into play if the Government attacks Defendant's character for truthfulness using opinion or reputation evidence.  If the Government's attack on Defendant's credibility constitutes cross-examination of Defendant seeking to point out contradictions in his own testimony or with other evidence, then Rule 608 is not implicated.  See Thomas, 768 F.2d at 618 ("Vigorous cross examination and/or the fact that a witness is contradicted by other evidence in the case does not constitute . . . an attack" governed by Rule 608); Hiscox Dedicated Corp. Member, LTD v. Matrix Group Ltd, Inc., 2011 WL 2148088, at *2 (M.D. Fla. May 31, 2011) (agreeing with the plaintiff "that pointing out to the jury specific instances of dishonesty relevant to the issues in the case does not amount, as a matter of law, to an attack on the Defendants' character for truthfulness") (citing, inter alia, United States v. Drury, 396 F.3d 1303, 1315 (11th Cir. 2005) ("upholding . . . exclusion of evidence of . . . defendant's truthful character where the

17

'attack' consisted solely of 'Government counsel pointing out inconsistencies in testimony and arguing that the accused's testimony is not credible'") (citation omitted)); <u>Maddox</u>, 21 F. Supp. 2d at 1339 n.1 (finding that the plaintiff's notice to introduce polygraph expert "is defective on its face because it fails to allege that plaintiff's character for truthfulness will be attacked; rather, it alleges that plaintiff's testimony will be contradicted").  And, even if the Government seeks to introduce evidence of Defendant's reputation for untruthfulness, the results of the polygraph examination is not properly admissible under Rule 608.

The court agrees with the analysis of this evidence set out by the district court in <u>Maddox</u>, 21 F. Supp. 2d at 1339-40.[6]  The testimony of Mr. Imbordino fails to meet the requirements of Rule 608 because (1) the results of the polygraph examination are inadmissible extrinsic evidence and (2) Mr. Imbordino cannot under the circumstances

_____

[6]Relying primarily on the district court decision in <u>United States v. Padilla</u>, 908 F. Supp. 923, 927-28 (S.D. Fla. 1995), Defendant contends that the Eleventh Circuit Court of Appeals in <u>Piccinonna</u>, 885 F.2d at 1536, "specifically endorsed" use of polygraph evidence pursuant to Rule 608.  [Doc. 35 at 11-13].  The court has read and considered the discussion in <u>Padilla</u> and, for the reasons stated by the district court in <u>Maddox</u>, does not find that court's analysis persuasive.  <u>Maddox</u>, 21 F. Supp. 2d at 1340; <u>and see</u> <u>Arthur</u>, 2011 WL 3844090, at *3 (subsequent decision out of Southern District of Florida finding that polygraph evidence was not admissible pursuant to Rule 608); <u>United States v. Castillo</u>, 1997 WL 83746, at *1 n.1 (E.D. Pa. February 19, 1997) (rejecting the analysis in <u>Padilla</u>).

presented render an opinion as to Defendant's character for truthfulness or, for that matter, untruthfulness.  Id. at 1339; see also Arthur, 2011 WL 3844090, at *3 (polygraph evidence "does not constitute testimony through opinion or reputation of the Defendant's character for truthfulness[;]" instead "the testimony seeks to introduce evidence of a specific instance of three prior out-of-court statements . . . and [the expert's] opinion that the Defendant was truthful as to those three statements"); Castillo, 1997 WL 83746, at 1 (finding that the results of a polygraph examination "is not a sufficient basis for an opinion that [the defendant] is a truthful or honest person[,]" the court held that the results only "reflect that, when asked certain specific questions, he responded in a way that was truthful").

First, as pointed out in Maddox, a "polygraph examination result is purported to be a measure of a specific instance of truthfulness."  21 F. Supp. 2d at 1339 (citing Scheffer, 118 S. Ct. 1261 n.13).  "As such, it is inadmissible extrinsic evidence under Rule 608(b)."  Id.  Second, Mr. Imbordino's "opinion on the results of the polygraph examination would not constitute an opinion on [Defendant's] 'character for truthfulness or untruthfulness,' nor is [he] qualified to render" such an opinion.  Id. (citation omitted).  Mr. Imbordino met with Defendant on one occasion for apparently less than one day obtaining from Defendant his version of the events underlying the

19

charges in the indictment.  [Doc. 15-2 Polygraph Report].  Mr. Imbordino then asked just two "relevant" questions, which were framed based on that interview, and determined that Defendant was truthful answering those two questions.  [Id.].  Mr. Imbordino's opinion, based on that brief encounter and Defendant's responses to two questions, "is *not* tantamount to addressing one's character for truthfulness." Maddox, 21 F. Supp. 2d at 1339 (emphasis in original).  Third, if offered not for the purpose of providing an opinion on the results of the polygraph test but to testify as to Defendant's character for truthfulness, Mr. Imbordino would not be qualified to do so.  "A single polygraph testing session is an inadequate foundation upon which an expert can base an opinion as to an individual's 'character' for truthfulness." Maddox, 21 F. Supp. 2d at 1339; see also Thomas, 768 F.2d at 618 ("although Rule 608 imposes no requisite of long acquaintance or recent information about the witness . . . for opinion testimony as to a witness's character for truthfulness, it is questionable whether the testimony of a polygraphist as to a person's truthfulness, which is based upon the results of the polygraph test, is truly opinion testimony within the meaning of Rule 608").

For these reasons, the court finds that, even if the Government attacks Defendant's "character for truthfulness" and not merely conducts a vigorous cross-examination seeking to point out contradictions in the evidence, Mr. Imbordino's

20

opinion regarding the results of the polygraph test does not constitute an opinion under Rule 608 as to Defendant's *character* for truthfulness - an opinion that he is also not qualified to give at trial.

The court finds that the polygraph evidence is not admissible pursuant to Rule 608.

### D.     Rule 403

"A trial court may exclude otherwise admissible evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .'" United States v. Gilliard, 133 F.3d 809, 815 (11th Cir. 1998) (quoting former Fed. R. Evid. 403).  The court further noted that because expert evidence can be powerful and potentially misleading, "'the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'"  Id. (quoting Daubert, 113 S. Ct. at 2798).  Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

21

Fed. R. Evid. 403 (as amended 2011).  A number of these factors weigh heavily against admitting Mr. Imbordino's opinion in this case.

Even assuming as the court has for the purpose of this report and recommendation that Defendant can satisfy Rule 702 and <u>Daubert</u>, the evidence proffered by Defendant has little probative value and poses a great risk of undue prejudice to the Government.  Defendant provided no advance notice to the Government that he was taking the polygraph examination.  [Doc. 15-2 Polygraph Report].  Accordingly, although the Government has been provided a videotape of the examination and the results of the examination, the Government was not able to be present at the examination nor to participate in the examination.  [<u>Id.</u>].  Most importantly, Defendant faced absolutely no risk in taking an examination that, if he had failed, would no doubt never been disclosed to the Government.

This court agrees with the Eighth Circuit Court of Appeals' conclusion about the probative value of such evidence under these circumstances.  The court stated, "Results from a [sic] unilateral polygraph examinations have little probative value. . . .  The defendant has no adverse interest at stake because a polygraph examination administered without notice to and participation by the government 'carries no negative consequences, and probably won't see the light of day if a defendant flunks.'"  <u>United</u>

22

States v. Montgomery, 635 F.3d 1074, 1093 (8th Cir. 2011) (citation omitted); see also

Gilliard, 133 F.3d at 816 (noting that, although the defendant was not required to give

advance notice of the polygraph test, "the absence of such notice and opportunity may

be a factor in determining whether admission of the polygraph evidence would unduly

prejudice the" Government - "viewing a videotape is not the same as being present at

the examination"); Maddox, 21 F. Supp. 2d at 1341 (same).

This evidence is also of limited value because of the nature of the opinion.  The

court already noted that the proffered opinion invades the province of the jury to make

credibility determinations and offers the jury highly questionable assistance in making

those determinations.

> The polygraph examiner can testify to only one matter - - that, in his or
> her opinion, the defendant's physiological responses indicated a lack of
> deception when, on another occasion outside of court, the defendant was
> asked certain questions.  This opinion is secondary and indirect indicia of
> truthfulness.

United States v. Duque, 176 F.R.D. 691, 695 (N.D. Ga. 1998); see also Maddox, 21 F.

Supp. 2d at 1340 (same).  And this evidence will also "diminish the jury's role in

making credibility determinations."  Scheffer, 118 S. Ct. at 1267 (noting that there are

legitimate concerns "about the risk that juries will give excessive weight to the opinions

of a polygrapher, clothed as they are in scientific expertise and at times offering, as in

23

[this] case, a conclusion about the ultimate issue in the trial" and because "a judge cannot determine, when ruling on a motion to admit polygraph evidence, whether a particular polygraph expert is likely to influence the jury unduly"); see also Pavlenko, 845 F. Supp. 2d at 1327-28 (finding that "there is a real danger that the jury may accord undue weight to expert evidence that attempts to validate Defendant's testimony"); Maddox, 21 F. Supp. 2d at 1340 (finding that the effect of such evidence would be "highly prejudicial and lead to jury confusion[,]" the court found that the evidence, "absent unusual circumstances, . . . is inadmissible because it invades the jury's province to make credibility determinations"); Duque, 176 F.R.D. at 695 ("[T]o shift the focus of trial to determining truthfulness based upon one person's opinion unduly invades the province of the jury to determine the credibility of all witnesses.").

In United States v. Call, 129 F.3d 1402 (10th Cir. 1997), the Tenth Circuit Court of Appeals found that the polygraph evidence, which "the Defendant sought to introduce . . . to bolster his credibility" by corroborating "his own testimony that he had no prior knowledge that any cocaine was in the vehicle[,]" was not admissible under Rule 403.  Id. at 1405-06.  The court found that, because "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony[,] . . . [s]uch testimony is often excluded . . . ."  Id. at 1406.  The testimony not only "usurps a critical function

24

of the jury" but "is not helpful to the jury, which is capable of making its own determination regarding credibility." <u>Id.</u>  Additionally, the court noted the danger of the jury overvaluing the polygraph results because of its scientific nature.  <u>Id.</u>  The analysis by the court in <u>Call</u>, as well as the other courts that have considered and omitted polygraph evidence for these reasons, is persuasive.

And, if admitted at trial, the time required to present - what may very be dueling expert polygraph opinions and quality control testimony - this evidence has the danger of shifting the focus away from determining guilt or innocence to this collateral matter. Although a hearing was not conducted in this case, the court has conducted <u>Daubert</u> hearings concerning the admissibility of polygraph evidence and is well aware that, even without a jury present, such hearings last many hours - sometimes even days.  The Supreme Court discussed this problem in <u>Scheffer</u>:

> Such collateral litigation prolongs criminal trials and threatens to distract the jury from its central function of determining guilt or innocence. Allowing proffers of polygraph evidence would inevitably entail assessments of such issues as whether the test and control questions were appropriate, whether a particular polygraph examiner was qualified and had properly interpreted the physiological responses, and whether other factors such as countermeasures employed by the examinee had distorted the exam results.

AO 72A
(Rev.8/82)

118 S. Ct. at 1267[7]; see also Gilliard, 133 F.3d at 815 (". . . a court may consider whether the amount of time needed to present the evidence would shift the focus of a criminal trial from determining guilt or innocence to determining the validity of the scientific method at issue"); Pavlenko, 845 F.3d at 1328 (same); Duque, 176 F.R.D. at 695 (same).

Applying the balancing test of Rule 403, the court finds - as have other courts that "have routinely deemed inadmissible evidence related to unilateral polygraph examinations" - the proffered evidence inadmissible. Montgomery, 635 F.3d at 1094 (citing, *inter alia*, Gilliard, 133 F.3d at 815-16); and see Pavlenko, 845 F. Supp. 2d at 1327-28; Arthur, 2011 WL 3844090, at *4; Maddox, 21 F. Supp. 2d at 1340-41; Duque, 176 F.R.D. at 695. The minimal probative value of the opinion is substantially outweighed by the unfair prejudice to the Government, by the potential for confusing

_____

[7]"Although some of this litigation could take place outside the presence of the jury, at the very least a foundation must be laid for the jury to assess the qualifications and skill of the polygrapher and the validity of the exam, and significant cross-examination could occur on these issues." Id. at 1267 n.10.  Defendant's response that the delay caused by determining the admissibility of this evidence is no greater than, say, for any motion to suppress evidence, entirely misses the point [Doc. 35 at 17-18] - no matter what is heard outside the jury's presence, a duplication of most of that evidence will need to occur during trial for the jury to independently access the expert testimony.

AO 72A
(Rev.8/82)

the issues and misleading the jury, and by the undue delay and wasting of time to present the evidence.

### E.   Evidentiary Hearing

Defendant contends that the court must conduct an evidentiary hearing in order to have a sufficient record to make the rulings contained herein - even assuming, as the court has, that Defendant satisfies Rule 702 and the Daubert factors.  [Doc. 35].  The court disagrees.  The only purpose of an evidentiary hearing would be to determine admissibility under Daubert.  Defendant, being well aware based on the discussion at the pretrial conference that the court was considering ruling without a hearing, has not proffered any possible evidence that could alter the court's analysis under Rules 403, 608 or 704 - nor for that matter to satisfy the requirement under Rule 702 that the opinion sought to be introduced would assist the trier of fact.  [Doc. 35].  A court is not required, even when actually conducting a Daubert analysis, to hold an hearing.  See Placida Professional Center, LLC v. Fed. Deposit Ins. Corp., 512 Fed. Appx. 938, 953 (11th Cir. 2013) ("a district court's decision on whether to hold a Daubert hearing, as well as a district court's ruling on the admissibility of expert testimony, [is reviewed] only for an abuse of discretion"); Dukes v. Georgia, 428 F. Supp. 2d 1298, 1310 (N.D. Ga. 2006) ("It is within the court's discretion whether or not to hold a Daubert hearing

27

. . . .").  In this case, the court assumed (with the exception as to "helpfulness") that Defendant could satisfy his <u>Daubert</u> burden.

In <u>Campos</u>, the Ninth Circuit Court of Appeals found that "the district court [did not] err in failing to conduct a <u>Daubert</u> hearing to determine whether the polygraph evidence was admissible." 217 F.3d at 712.  The court in that case, as this court has in this case, determined that the polygraph evidence was not admissible under Rule 704 without addressing admissibility under Rule 702.  The court stated, "If evidence is inadmissible by application of one evidentiary rule, there is no need for a court to determine whether it satisfies predicate evidentiary standards pertaining to another rule."  <u>Id.</u>  Likewise, in <u>Montgomery</u>, the Eighth Circuit Court of Appeals declined to rule on admissibility under Rule 702 having found that the polygraph evidence was inadmissible under Rule 403.  635 F.3d at 1094 n.9.  And in <u>Call</u>, the Tenth Circuit Court of Appeals found that the defendant's contention of error because the district court failed to conduct a <u>Daubert</u> hearing on the admissibility of polygraph results or to make findings under Rule 702 and <u>Daubert</u> need not be reached because the district court properly ruled the evidence inadmissible pursuant to Rule 403.  <u>Id.</u> at 1405-06.  <u>See also</u> <u>Maddox</u>, 21 F. Supp. 2d at 1338 ("Because the Court finds the polygraph evidence inadmissible under Rules 608 and 403, the Court will not resolve the threshold

28

inquiry under Rule 702 and will assume some relevance [of the polygraph evidence] . . . ."); <u>Castillo</u>, 1997 WL 83746, at *1 (finding that the court did not need to reach the <u>Daubert</u> issue because the court found that the polygraph examiner's opinion was not admissible under Rules 608 and 403).

A <u>Daubert</u> hearing in this case would not assist this court in conducting the evaluation of admissibility of the results of the polygraph examination.  <u>See</u> <u>United States v. Scarpon</u>, 2006 WL 5100541, at *1 (S.D. Fla. September 12, 2006) ("<u>Daubert</u> hearings are not required by law or by rules of procedure and are typically held only when such a hearing would be fruitful for a case as well as a truly constructive use of the court's time and resources.") (citation and internal quotation marks omitted).  For these reasons, the court denies Defendant's request to hold a <u>Daubert</u> hearing.

## III.   Conclusion

For the foregoing reasons and cited authority, the court **DENIES** Defendant's request to hold an evidentiary hearing on the motions to admit polygraph evidence and **RECOMMENDS** that Defendant's motions [Docs. 15 and 23] to admit such evidence be **DENIED**.

**Motion to Compel Disclosure of Exculpatory Material**

Defendant seeks an order from the court compelling the Government to produce exculpatory materials pursuant to <u>Brady v. Maryland</u>, 83 S. Ct. 1194 (1963), as follows:

- *Any and all* documents prepared by Agent Johnson or other law enforcement agents with regard to the IRS investigation into Mr. Warner's activities, including, but not limited to, notes, memoranda of interviews, telephone records, e-mail correspondence, lists of individuals contacted by the IRS in its investigation into Mr. Warner's alleged activities, and summaries of the investigative steps taken by law enforcement in its investigation of Mr. Warner's alleged activities;

- *Any and all* documents received by Agent Johnson or other law enforcement agents from other individuals regarding the investigation into Mr. Warner's activities, including, but not limited to, statements from supposed "victims" of Mr. Warner's alleged activities;

- *Any and all* audio and/or video recordings of conversations of/between law enforcement agents and other individuals regarding the investigation into Mr. Warner's alleged activities; and

- *Any other information related to Agent Johnson's investigation into Mr. Warner's alleged activities.*

[Doc. 22 at 3-4 (emphasis added)].  The basis for contending that "any and all" of these materials contain exculpatory information is the comment allegedly made[8] in September 2012 by IRS Special Agent Malcolm Johnson, who was conducting the preliminary investigation of Defendant's activities, to Defendant's former attorney,

---

[8]Agent Johnson denies making this statement.  [Doc. 30 at 3].

Craig Gillen, "that he was closing his criminal file with regard to Mr. Warner and that he expected that the IRS would take civil action to seize questioned bank funds." [Doc. 22-1, Affidavit Gillen, ¶¶ 5, 8].[9]  Defendant claims that he has a "good faith" basis because of this comment in believing that Agent Johnson "made a determination that Defendant had not committed any criminal acts" and that Defendant was entitled to the investigatory file to find out why that decision was made.  [Doc. 22 at 6].  In the alternative, if the court declines to order the blanket disclosure of all the information being sought, Defendant requests that the court conduct an *in camera* review of all of the identified materials and that an evidentiary hearing be held to allow Defendant to question the agent regarding his investigation to find out what "led [the agent] to determine that Defendant's actions were not criminal."  [Id. at 7].

The Government responds that, even assuming Agent Johnson made the statement to Mr. Gillen, Defendant has not met his burden to compel disclosure of the entire government file.  The Government asserts that Defendant's request sweeps too broadly, seeking the entire file and not just materials that are exculpatory as required

---

[9]In January 2012, Agent Johnson, according to Mr. Gillen, "expressed concern to me that Mr. Warner was allegedly continuing to file additional improper tax returns" and that the agent was going to continue to investigate Defendant's activities.  [Id., ¶ 7].

by Brady. [Doc. 30 at 4]. The Government also points out that the court has already ordered the Government to produce all Brady materials and that the Government understands the obligation to do so. Accordingly, Defendant is not entitled to further relief. [Id. at 5]. And the Government asserts that the alleged statement to Mr. Gillen does not alter the Government's Brady obligations. [Id. at 6]. The Government also points out that Defendant's contention that the investigative files contain exculpatory materials is speculative and that Defendant has assumed that the agent's comment about closing his file meant that the agent determined that Defendant's actions were not criminal. [Id. at 7]. The Government points out that although Defendant has received voluminous discovery materials, exceeding what is required by Fed. R. Crim. P. 16, he has not pointed to one item that suggests the files sought contain exculpatory information. [Id. at 8]. Finally, the Government contends that the court is not required on this record to conduct an *in camera* review of the files being sought nor to conduct an evidentiary hearing on Defendant's motion. [Id. at 8-9].

In reply, Defendant states that, although the Government is allegedly aware of its Rule 16 and Brady obligations, he has made repeated specific requests for certain information, not initially turned over by the Government, but which has subsequently been provided after the Government has searched the investigative file. [Doc. 36 at 1-

AO 72A
(Rev.8/82)

2].  The items that Defendant identifies as being turned over after a specific request are as follows.  The initial discovery production failed to contain the memoranda of two interviews of Defendant by law enforcement.  After Defendant requested those items, the Government searched the file and provided the reports of those two interviews in April 2013.  [Id. at 3-4].  In July 2013, Defendant also requested missing Rule 16 material, an email from Defendant to Agent Johnson containing a list of Defendant's clients.  The Government subsequently produced a list of clients that Defendant had provided during a meeting with the agents.  [Id. at 4].  And, although the Government produced additional documents in September 2013, the client list Defendant believes he emailed to Defendant is not included in the materials.  [Id. at 5].  Defendant contends that also missing are any summaries of conversations between Defendant's attorneys and the agents, although he fails to explain how any such summaries are either covered by Rule 16 or Brady.  Finally, Defendant states that the information regarding why the agent decided not to prosecute Defendant was not included in the September 2013 production.  [Id. at 5].  As to the information specifically requested and turned over belatedly by the Government or produced in September, Defendant does not contend that anything therein required disclosure pursuant to Brady.  [Doc. 36].

## I.    Discussion

In <u>Brady</u>, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 83 S. Ct. at 1196-97.  Subsequently, in <u>Giglio v. United States</u>, 92 S. Ct. 763, 766 (1972), and <u>United States v. Bagley</u>, 105 S. Ct. 3375, 3380 (1985), the Supreme Court held that a prosecutor's <u>Brady</u> obligations encompass impeaching, as well as exculpatory, evidence to the extent it is material.  "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Kyles v. Whitley</u>, 115 S. Ct. 1555, 1565 (1995) (quoting <u>Bagley</u>, 105 S. Ct. at 3383); <u>accord</u> <u>United States v. Starrett</u>, 55 F.3d 1525, 1555 (11th Cir. 1995) ("Under <u>Brady v. Maryland</u>, the prosecution is required to disclose to the defense evidence favorable to the accused if the evidence is material to guilt or punishment.").  Thus, a prosecutor has an obligation to disclose favorable, material evidence, including impeachment evidence, in its possession to the extent the defendant neither possesses the evidence nor could obtain it himself with due diligence.  <u>See</u> <u>United States v. Butler</u>, 275 Fed. Appx. 816, 820

34

(11th Cir. 2008) (In order to establish a <u>Brady</u> violation, a defendant must prove the following: "'(1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different.'") (citation omitted); <u>United States v. Meros</u>, 866 F.2d 1304, 1308 (11th Cir. 1989) (same).

"The defendant's right to the disclosure of favorable evidence, however, does not 'create a broad, constitutionally required right of discovery.'" <u>United States v. Jordan</u>, 316 F.3d 1215, 1251-52 (11th Cir. 2003) ("Indeed, a 'defendant's right to discover exculpatory evidence does not include the unsupervised right to search through the [government's] files,' . . . nor does the right require the prosecution to deliver its entire file to the defense.") (citations omitted); <u>see also</u> <u>United States v. Allen</u>, 416 Fed. Appx. 875, 879 (11th Cir. 2011) ("The '<u>Brady</u> rule is not an evidentiary rule that grants broad discovery powers to a defendant.'") (quoting <u>United States v. Quinn</u>, 123 F.3d 1415, 1421-22 (11th Cir. 1997)).

35

Defendant has not established that, what appears to be the entire Government investigative file in this case, is <u>Brady</u> material.  Defendant's request is basically "a general request for exculpatory material under <u>Brady</u>," which allows the Government to "decide[ ] which information must be disclosed."  <u>Jordan</u>, 316 F.3d at 1252 n.81 (quoting <u>Pennsylvania v. Ritchie</u>, 107 S. Ct. 989, 1002 (1987)).  Defendant's request is simply too broad - he seeks to have access to the entire government investigative file to search for some tidbit or kernel of information supporting his contention that Agent Johnson decided Defendant's actions were not criminal.  [Doc. 22 at 3-4, 6-7].  Due to the nature of the <u>Brady</u> request, "'[u]nless the defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.'"  <u>Id.</u> (quoting <u>Ritchie</u>, 107 S. Ct. at 1002).  Although Defendant pointed out a few items that may have required disclosure under Rule 16, which the Government only produced after Defendant made a specific request (the two memoranda of his interviews and a client list he provided to the Government during an interview), Defendant presented no argument that those items contained <u>Brady</u> material.  [Doc. 36].  And the fact that the September 2013 production by the Government did not contain another client list provided by Defendant to the Government, an item of which Defendant is apparently fully aware and one would

36

assume has a copy of since he claims to have sent it by email, and did not include summaries of conversations between his attorneys and Government agents, items that Defendant fails to articulate how they fall under either Rule 16 or Brady [Doc. 36 at 5], does not support his argument.  The remaining request for the investigative file is not sufficiently specific to trigger a further response from the Government.

In addition to Defendant's failure to identify specific information for disclosure, he has failed to present a sufficient argument that the entire investigative file qualifies as Brady information.  "[M]ere speculation or allegations that the prosecution possesses exculpatory information will not suffice to prove 'materiality.'"  Jordan, 316 F.3d at 1252 n.81; see also United States v. Owden, 345 Fed. Appx. 448, 457 (11th Cir. 2009) ("A district court may decline to order discovery 'based upon mere speculation as to whether the material would contain exculpatory evidence because to do so would convert Brady into a discovery device and impose an undue burden upon the district court.'") (quoting United States v. Arias-Izquierdo, 449 F.3d 1168, 1189 (11th Cir. 2006)); Quinn, 123 F.3d at 1422 (same).  Defendant bases his motion to compel disclosure of exculpatory information on the comment allegedly made by Agent Johnson to Defendant's former counsel "that he was closing his criminal file with

37

regard to Mr. Warner and that he expected that the IRS would take civil action to seize questioned bank funds." [Doc. 22-1, Affidavit Gillen, ¶¶ 5, 8].

Defendant's extrapolation from that comment to a conclusion that the agent had determined that Defendant's conduct with respect to the filing of the tax returns *was not criminal* is speculative and does not support a finding of materiality. See United States v. Naranjo, 634 F.3d 1198, 1212 (11th Cir. 2011) (rejecting a Brady disclosure demand for an investigative file as speculative when the file was closed due to lack of resources and nothing was said about whether the defendant had violated any law). As the Government points out, the agent had a few months prior to making this comment "expressed concern to [the same attorney] that Mr. Warner was allegedly continuing to file additional improper tax returns" and that the agent was going to continue to investigate Defendant's activities. [Id., ¶ 7]. And, as noted, a few months later, the Government obviously had not closed the criminal case because a federal grand jury returned an indictment against Defendant for his activities. [Doc. 1]. The isolated comment relied on by Defendant simply does not provide a sufficient basis to require the Government to open its investigative file for Defendant's perusal - nor for that matter is the comment sufficient to require the court to conduct an *in camera* review of

the entire file. See Quinn, 123 F.3d at 1422 (noting that mere speculation that files contain Brady materials is insufficient to require an *in camera* inspection).

The court finds that conducting an *in camera* review of all of the materials sought by Defendant is not necessary under the circumstances presented and would require a significant investment of judicial resources. See Allen, 416 Fed. Appx. at 879 (denying the defendant's "request for an *in camera* review of the entire investigatory file . . . because it was not proper Brady material, was irrelevant, and would require excessive time and resources to review"). However, due to the fact that "[n]ot infrequently, what constitutes Brady material is fairly debatable[,]" if such is the case as to any materials not yet disclosed, the Government "should mark the material as a court exhibit and submit it to the court for in camera inspection." Jordan, 316 F.3d at 1252; accord Allen, 416 Fed. Appx. at 879 (same).

Likewise, Defendant is not entitled to an evidentiary hearing on his motion. The court has assumed for the purpose of ruling on the motion that Agent Johnson made the comment to Mr. Gillen forming the basis for the motion. No evidence need be taken on that issue. And Defendant is no more entitled under the facts presented to the court to conduct discovery of the investigative file at an evidentiary hearing than he is by production of the file for his review. [Doc. 36 at 6 ("Defendant respectfully prays for

39

. . . an evidentiary hearing wherein Agent Johnson can explain the actions he took which led him to determine that Defendant's activities were not criminal.")].

## II.    Conclusion

For the foregoing reasons and cited authority, the court **DENIES** Defendant's motion [Doc. 22] to compel disclosure of exculpatory material, **DENIES** Defendant request for an *in camera* review of the entire Government investigative file, and **DENIES** Defendant's request for an evidentiary hearing.

## Conclusion

For these reasons, the court **RECOMMENDS** that Defendant's motions [Docs. 15 and 23] to admit the results of the polygraph examination be **DENIED**, and the court **DENIES** Defendant's request for an evidentiary hearing on the motions to admit the polygraph evidence, **DENIES** Defendant's motion [Doc. 22] to compel production of exculpatory material, **DENIES** Defendant's request for an *in camera* inspection of that material, and **DENIES** Defendant's request for an evidentiary hearing on the motion to compel.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

AO 72A
(Rev.8/82)

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**IT IS SO ORDERED and RECOMMENDED**, this 22nd day of October, 2013.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

41