UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CIVIL ACTION NO. 1:13-CR-0139-CAP |
| MAURICIO WARNER, | |

**O R D E R**

This matter is before the court on the magistrate judge's report and recommendation ("R&R") [Doc. No. 37] recommending that Defendant Mauricio Warner's motion [Doc. No. 15] and supplemental motion [Doc. No. 23] to admit the results of a polygraph examination taken by Warner on May 29, 2013, be denied and that Warner's motion to compel disclosure of exculpatory material [Doc. No. 35] be denied. Warner filed objections [Doc. No. 55] to the R&R.

**I.      Warner's Motion to Admit Polygraph Results**

As an initial matter, Warner did not object to any of the factual findings in the magistrate judge's R&R. Accordingly, and because there appears to be no clear error, the court adopts those findings of fact (for the purpose of addressing the motions at issue) and incorporates them herein.

### A. Background

On April 16, 2013, a federal grand jury seated in this district returned an indictment against Warner charging him with fifty counts involving violations of 18 U.S.C. § 1343 (Counts 1–16, wire fraud), § 1028A (Counts 17–32, aggravated identity theft), § 287 (Counts 33–48, false claims), and § 1957 (Counts 49–50, money laundering). The indictment also contains a forfeiture provision. All of the charges in the indictment arise out of Warner's allegedly fraudulent scheme to obtain personal identifying information from unsuspecting third parties, who were told by Warner that they would receive a "stimulus payment" or "Free Government Money" funds from the government, and then to use that information to file allegedly false and fraudulent income tax returns. As a result of this alleged conduct, Warner filed over 5,000 tax returns and caused to be deposited millions of dollars into bank accounts under his control.

Thus, Warner is charged with knowingly and intentionally devising a scheme and artifice to defraud the Internal Revenue Service ("IRS"), that is, filing the fraudulent tax returns, while knowing said tax returns were false and fraudulent, and with knowingly filing false claims with the IRS. And he is charged with knowingly possessing and using the identification information of third parties without lawful authority by the filing of the

unauthorized tax returns. The money laundering counts arise out of the depositing of the allegedly ill-gotten tax refunds.

On May 29, 2013, without prior notice to the government, Warner attended a polygraph examination given by Donald J. Imbordino. Warner met Mr. Imbordino, apparently for the first and only time, to conduct the examination. During the polygraph pre-test, Warner explained his tax services and, according to the report, "categorically denied ever knowingly preparing a tax return that was not legitimate." The report states that two relevant questions were asked and provides Mr. Imbordino's "opinion concerning [Warner's] veracity relative to these" questions:

1. Did you ever file a tax return knowing you did not have that person's authority to do so? Answer: No.
2. Did you ever file a tax return knowing that the person was not entitled to the refund you requested? Answer: No.

OPINION: No Deception Indicated. Based on Mr. Imbordino's analysis of the three charts collected[, Defendant's] responses did not indicate deception when answering the above relevant questions.

Defendant also provided a quality control review of the polygraph examination conducted by Elmer Criswell. Mr. Criswell concluded that the polygraph examination was properly conducted and that he agreed with Mr. Imbordino's "determination of truthfulness on the polygraph examination" by Warner.

Warner, in addition to giving the government notice of the intent to use the polygraph examination results at trial, advised the government that he will submit to a polygraph examination, if requested, to be administered by an expert of the government's choosing.

**B. Standard of Review**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's R&R. 28 U.S.C. § 636(b)(1); *United States v. Powell*, 628 F.3d 1254, 1256 (11th Cir. 2010). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). On the other hand, portions of the R&R to which there is no objection are reviewed for clear error. 28 U.S.C. § 636(b)(1); Fed R. Crim. P. 59(a). A district court may not reject the credibility determinations of a magistrate judge without personally rehearing disputed testimony from the witness. *Powell*, 628 F.3d at 1256–58.

**C. Analysis**

The magistrate judge concluded that Warner's polygraph test is not admissible as evidence because the test and the polygraph administrator's possible testimony fail satisfy Federal Rules of Evidence 702, 704, 608, and 403. In his objections, Warner argues that the test and testimony could satisfy each of these rules of evidence.

    *1. Rule 702*

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data:
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to Rule 702, as well as *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (2003) and its progeny, "district courts must act as 'gatekeepers'[, admitting] expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The Court in *Rink* stated:

5

> To fulfil their obligation under Daubert, district courts must engage in a rigorous inquiry to determine whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* at 1291–92 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)) (internal quotation marks omitted). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Id.* at 1292. This burden remains the same "whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The magistrate judge concluded that even assuming *arguendo* that Warner could satisfy the first two elements, the results of the polygraph test and Imbordino's testimony would not "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." This is because the only evidence or fact in issue that the polygraph evidence could assist the jury with is whether Warner is told the truth. This determination is not something that requires the input of an expert because "the determination of whether [Warner] lied in

6

the present case or in past incidents is not beyond the understanding of an average lay person." *See Humbert v. City of Coll. Park*, 1:05-CV-02740-GET, 2008 WL 5586504 *4 (N.D. Ga. Aug. 18, 2008). The magistrate judge also found that the polygraph evidence would not assist the jury because, "a fundamental premise of our criminal trial system is that the *jury* is the lie detector," *United States v. Scheffer*, 523 U.S. 303, 313 (1998) (emphasis in original).

Warner has objected to this conclusion for a number of reasons. First, he argues that he should have been given the opportunity to argue the first two elements of the *Daubert* test before the court makes a final conclusion about the polygraph's admissibility under Rule 702. Second, he argues that no evidence has been presented to the court that the polygraph evidence would not assist the trier of fact. Third, he argues that a number of dissenting and concurring opinions in various United States Supreme Court decisions support the admissibility of the evidence. Fourth, he argues that many of the cases that the magistrate judge cites are inapposite of this case, or at least distinguishable from the facts at issue here. Finally, Warner argues that he should have been given a hearing to explain how the proffered evidence would be used at trial and that he was not aware that he would not

7

be given the opportunity for a hearing before the magistrate judge issued the R&R.

Despite Warner's protestations, he never addresses or specifically objects to the fundamental rationale that the magistrate judge provides for why the polygraph evidence is inadmissible under Rule 702, namely, that "the expert opinion in this case, as to the credibility of Defendant, is a matter within the exclusive province of the jury and because that opinion will not assist the trier of fact by addressing matter beyond the understanding of the jurors." The court agrees with the magistrate judge's conclusion, and no part of Warner's objections either contradicts or undermines the soundness of this outcome. Thus, the court agrees with the magistrate judge's conclusion that the polygraph evidence is inadmissible under Rule 702. Having concluded that the magistrate judge's recommendation as to Rule 702 should be adopted, the court need not address Warner's remaining objections to the admissibility of the polygraph evidence.

## II.   Warner's Motion to Compel Disclosure of Exculpatory Material

Warner also filed a motion with the magistrate judge seeking an order from the court compelling the government to produce exculpatory materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Warner seeks:

> Any and all documents prepared by Agent Johnson or other law enforcement agents with regard to the IRS investigation into Mr. Warner's activities, including, but not limited to, notes, memoranda of interviews, telephone records, e-mail correspondence, lists of individuals contacted by the IRS in its investigation into Mr. Warner's alleged activities, and summaries of the investigative steps taken by law enforcement in its investigation of Mr. Warner's alleged activities;
>
> Any and all documents received by Agent Johnson or other law enforcement agents from other individuals regarding the investigation into Mr. Warner's activities, including, but not limited to, statements from supposed "victims" of Mr. Warner's alleged activities;
>
> Any and all audio and/or video recordings of conversations of/between law enforcement agents and other individuals regarding the investigation into Mr. Warner's alleged activities; and
>
> Any other information related to Agent Johnson's investigation into Mr. Warner's alleged activities.

Warner is seeking this information because of a comment that IRS Special Agent Malcolm Johnson allegedly made in September 2012 while conducting a preliminary investigation of Warner.

The magistrate judge concluded that these requests amounted to a request for the government's entire investigative file for this case. The magistrate judge therefore construed the request as a general request for exculpatory material under *Brady*, which allows the government to "decide[] which information must be disclosed." *United States v. Jordan*, 316 F.3d

9

1215, 1252 n.81 (11th Cir. 2003). Thus, "[u]nless the defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Id*. The magistrate judge found that while Warner had identified a few specific items that may have required disclosure under Rule 16 (which the government did disclose upon request), he did not argue that any of the items he requested contained *Brady* material. In short, the magistrate judge concluded that Warner's requests amounted to nothing more than "mere speculation," which cannot overcome the government's assertion that all *Brady* material had been produced.

In his objections, Warner argues that his assertion that Agent Johnson told Warner's prior attorney, Craig Gillen, "that he [Agent Johnson] was closing his criminal file with regard to Mr. Warner and that he expected that the IRS would take civil action to seize the questioned bank funds" is sufficiently specific to raise his *Brady* requests above the level of "mere speculation." Warner argues that this alleged assertion establishes a "good faith basis to believe that Agent Johnson made a determination that criminal charges should not be brought against Defendant . . . ." Def.'s Objs. to the R&R [Doc. No. 55 at 36].

As the magistrate judge points out, however, it would be speculative to find that this alleged comment demonstrates that Agent Johnson had determined that Warner's actions were not criminal. In addition, the government clearly had not closed its criminal case because a federal grand jury indicted Warner for these actions a few months after the alleged comment. The court agrees with the magistrate judge's conclusion that the single alleged comment is not sufficient to require the government to open its entire investigative file for Warner's inspection.

Warner has also requested an *in camera* inspection of all of the materials he requested and an evidentiary hearing on the same. The court agrees with the magistrate judge's conclusion that Warner has not presented anything more than speculation, which does not give rise to the need for an *in camera* inspection or an evidentiary hearing.

## III. Conclusion

After carefully considering the R&R [Doc. No. 37] and the objections thereto, the court receives it with approval and adopts it as the opinion and order of the court.

**SO ORDERED** this 7th day of April, 2014.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge